# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5005 | **DATE** | 12/2/2003 |
| **CASE TITLE** | Union Pacific Railroad Co. vs. Crew Transportation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Continental Casualty Company's motion for Protective Order (6-1) is granted in part and denied in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 0 3 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 14 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 DEC -2 PM 8:06 | DEC 0 3 2003 date mailed notice | |
| SLB | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD CO., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CREW TRANSPORTATION SERVICES, INC., ) <br> ) <br> Defendant/Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BROWN'S CREW CAR OF WYOMING, INC., ) <br> d/b/a Armadillo Express, ) <br> ) <br> Third-Party Defendant ) | 03 C 5005 <br><br> Judge George W. Lindberg <br><br><br><br> DEC 0 3 2003 |

**MEMORANDUM OPINION AND ORDER**

Non-party Continental Casualty Company ("Continental Casualty") moves for a protective order precluding discovery of documents sought by plaintiff Union Pacific Railroad ("Union Pacific") under a June 25, 2003 subpoena duces tecum, which are listed in the privilege logs of Continental Casualty or defendant Crew Transportation Services ("CTS"). Because the privilege logs inadequately describe the authors and recipients of the documents listed in the logs, the court directed Continental Casualty to provide a description of the authors and recipients of the documents, and to supply the documents at issue for an <u>in camera</u> inspection. For the reasons stated below, the motion for protective order is granted in part and denied in part.

**I. Background**

In a 1992 contract between CTS and Union Pacific, CTS agreed to provide transportation services to Union Pacific employees. The contract provided that CTS would indemnify Union

Pacific for losses arising out of injuries resulting from an "insurable casualty." In 1999, three Union Pacific employees were injured in an accident that occurred in Nebraska while they were riding in a van operated by CTS subcontractor Armadillo Express. Union Pacific paid a settlement to the three employees, and recovered part of its expenses from Armadillo pursuant to an indemnification agreement between Armadillo and CTS. Union Pacific then demanded that CTS indemnify it for its remaining $2.5 million of expenses it claims it incurred. CTS refused, and Union Pacific filed suit in the United States District Court for the District of Nebraska, alleging claims of breach of contract, promissory estoppel, quantum meruit/unjust enrichment, reformation, and waiver/estoppel/modification.

The action in the District of Nebraska turns on the question of whether the van accident was an "insurable casualty" under the contract between Union Pacific and CTS. CTS takes the position that it is not. According to Union Pacific, in a number of prior accidents involving Union Pacific employees being transported in CTS vans, CTS agreed to defend and indemnify Union Pacific for the resulting losses.

Continental Casualty, an Illinois corporation headquartered in Chicago, is CTS's insurance carrier. On June 26, 2003, Union Pacific served Continental Casualty with a subpoena issued out of this court, seeking documents relating to the prior van accidents. Continental Casualty moves for a protective order in this court, on the basis that the subpoenaed documents are protected under the attorney-client privilege or the work product doctrine.

**II. Analysis**

In this case, federal law controls the work product doctrine issues. See Fed. R. Civ. P. 26(b)(3). On the other hand, the court must look to state law in determining whether the

2

attorney-client privilege applies. See Fed. R. Evid. 501. In a case such as this, where a discovery dispute arises in Illinois out of litigation in another state, Illinois law controls the attorney-client privilege issues. See Urban Outfitters, Inc. v. DPIC Cos., 203 F.R.D. 376, 379 (N.D. Ill. 2001).

### A. Attorney-Client Privilege

The court first considers whether the attorney-client privilege protects the documents at issue. Continental Casualty asserts the attorney-client privilege as to documents created by its counsel that analyze Continental Casualty's coverage obligations under the policies issued to CTS, and communications between Continental Casualty and its counsel retained to give advice regarding the CTS policies. Continental Casualty lists these documents in a privilege log it prepared.

Continental Casualty has also submitted a second privilege log, which was prepared by CTS. In its memorandum in support of its motion for protective order, Continental Casualty argues that the documents listed in the second privilege log are documents created by counsel retained by Continental Casualty to represent CTS, and also are protected by the attorney-client privilege, as well as the work product doctrine. However, the privilege log submitted by Continental Casualty for these documents states only that these documents are protected by the work product doctrine. Accordingly, Continental Casualty waived the attorney-client privilege as to these documents. The court will evaluate these documents in the context of its analysis of the application of the work product doctrine below.

The court turns to the question of whether the attorney-client privilege protects the documents listed in the privilege log prepared by Continental Casualty. Union Pacific argues that the privilege is inapplicable because a common interest in defending the prior claims existed

between Union Pacific, CTS, and Continental Casualty. In support of this argument, Union Pacific cites Waste Management, Inc. v. International Surplus Lines Ins. Co., 579 N.E.2d 322 (Ill. 1991). In Waste Management, the Illinois Supreme Court considered whether an insurer was entitled to the insured attorney's files in the underlying litigation. The court held that the insurer was entitled to the documents because the common interest doctrine renders the attorney-client privilege inapplicable where an attorney "acts for the mutual benefit of both the insured and the insurer." Id. at 329.

The court has conducted an in camera review of the documents listed in the privilege log prepared by Continental Casualty. Most of these documents are not the documents of an attorney acting for the mutual benefit of Continental Casualty, CTS, and Union Pacific. Rather, they are internal documents prepared by Continental Casualty's own attorney that analyze Continental Casualty's coverage obligations. As such, they are protected by even the narrow attorney-client privilege recognized by the Illinois courts. Accordingly, Continental Casualty's motion for protective order is granted as to the following documents listed in the privilege log it prepared: CONT001866-72, 1909, 5518-46, 5618-35, 5642, 5827, 6045-48, 6058-96, 6098, 6100, 6102, and 6129. Continental Casualty's motion for protective order is denied as to CONT005512-17, 5643-45, and 5828-29.

### B. Work Product Doctrine

The court next considers the application of the work product doctrine to the remaining documents listed in the privilege log prepared by Continental Casualty. As codified in Federal Rule of Civil Procedure 26(b)(3), the work product doctrine protects from disclosure documents and tangible things prepared in anticipation of litigation or for trial, by or for a party, or by or for

a party's attorney. Fed. R. Civ. P. 26(b)(3). Materials protected under the work product doctrine may nevertheless be subject to disclosure if the party seeking discovery shows a substantial need for the materials, and an inability to obtain the substantial equivalent of the information by other means. Id. However, an attorney's "mental impressions, conclusions, opinions, or legal theories" are "nearly absolutely protected" and are not discoverable except in "very rare and extraordinary circumstances." Minnesota Sch. Bds. Ass'n Ins. Trust v. Employers Ins. Co. of Wausau, 183 F.R.D. 627, 630 (N.D. Ill. 1999).

The court concludes that the following documents listed in the privilege log prepared by Continental Casualty are protected under the work product doctrine: CONT001909, 5543-46, 5636-40,[1] 5994-6000, 6177-21, and 6140-43. Continental Casualty's motion for protective order is granted as to these documents.

Finally, the court considers the application of the work product doctrine to the documents listed in the privilege log prepared by CTS. In its memorandum filed in support of its motion for protective order, Continental Casualty describes these documents as "documents created by the counsel retained by Continental Casualty to represent CTS pursuant to Continental Casualty's duty to defend under its policies, and documents reflecting communications between retained counsel and Continental Casualty personnel handling the claims made by CTS under Continental Casualty's policies." To the extent that such documents were prepared in anticipation of litigation, they are work product, unless an exception to the work product doctrine applies. Moreover, the documents created by counsel are opinion work product, and thus not

---

[1] Continental Casualty's privilege log erroneously identifies these documents as CONT005619-35.

discoverable. As for the documents that are ordinary work product, Union Pacific has not made any showing of a substantial need for the materials, and an inability to obtain the substantial equivalent of the information by other means.

Instead, Union Pacific argues that the work product doctrine does not protect the documents at issue because the documents were not created in anticipation of the current litigation, but rather in anticipation of past litigation in which Union Pacific, CTS, and Continental Casualty shared a common interest. Union Pacific's reliance on the common interest doctrine here is misplaced. As noted above, federal law governs the application of the work product doctrine, not state law, and thus Union Pacific's reliance on the Illinois Supreme Court's opinion in Waste Management is unavailing. Nor has Union Pacific persuaded the court that the federal standard should embrace the common interest exception under the facts presented in this case. See Abbott Labs. v. Alpha Therapeutic Corp., 200 F.R.D. 401, 410 (N.D. Ill. 2001) ("At this point there is no certainty that the common interest between Abbott and Alpha, that had its roots in successfully defending or defeating the underlying hemophiliac litigation, is sufficient to abrogate the work product protection claimed by Alpha. While that common interest is sufficient to render the attorney-client privilege inapplicable…, that reasoning is derived from Illinois common law and not from a federal standard which we must here apply."). But see LaSalle Nat'l Trust v. Schaffner, No. 91 C 8247, 1993 WL 105422, at *6 (N.D. Ill. Apr. 6, 1993) (applying common interest exception under federal law to abrogate the work product doctrine between an insurer and an insured with respect to documents prepared for underlying litigation).

The court has conducted an in camera review of the documents listed in the privilege log prepared by CTS. The court finds that the following documents listed in the privilege log

prepared by CTS were created by the counsel retained by Continental Casualty to represent CTS pursuant to Continental Casualty's duty to defend under its policies, or reflect communications between retained counsel and Continental Casualty personnel handling the claims made by CTS under Continental Casualty's policies, and as such are protected under the work product doctrine: CONT000006-7, 474, 603-14, 615-23, 625, 629-39, 640, 642, 645, 646, 648, 653, 658, 659, 678, 686-87, 688-700, 701-14, 715-16, 718-21, 722, 723-24, 725-26, 727-28, 769-85, 786, 794, 795-96, 801-02, 804, 805, 837-38, 844-45, 857-58, 869-88, 889-90, 894-900, 904, 907-08, 909-10, 911-13, 914-20, 921-32, 933, 934-42, 943, 998-99, 1000, 1001, 1085-86, 1088, 1089, 1225, 1226, 1665-66, 1667, 1671-78, 1680, 1681-86, 1700, 1742, 1799, 2189-2200, 2214, 2230, 2276, 2277-2301, 2302, 2303-30, 2375-77, 2378-81, 2386-87, 2388-2402, 2403-20, 2432-33, 2437-39, 2440, 2441, 2442-47, 2448-59, 2460-65, 2466-81, 2482, 2483-99, 2502-03, 2522-23, 2524, 2525, 2526, 2527, 2530, 2537-38, 2539-40, 2541, 2542-53, 2555, 2577-78, 2616-17, 2637, 2854-66, 2879-87, 2888-98, 2990-91, 2992-93, 2994-97, 3003-04, 3006-07, 3009-10, 3017-19, 3020-25, 3026-27, 3033-39, 3040, 3041-44, 3177-80, 3181-86, 3187, 3188-89, 3190, 3192, 3197, 3211, 3310-24, 3325-26, 3329-30, 3339, 3370-71, 3565-66, 3640-49, 3861-70, 3885, 3886-87, 3964-66, 3986, 3987-88, 4028-45, 405456, 4076-77, 4278-80, 4288-92, 4319-23, 4343-44, 4346-48, 4350-53, 4359-62, 4371-72, 4384, 4433, 4742, 4782, and 5443.

The remaining documents listed in the privilege log prepared by CTS were neither created by the counsel retained by Continental Casualty to represent CTS pursuant to Continental Casualty's duty to defend under its policies, nor reflect communications between retained counsel and Continental Casualty personnel handling the claims made by CTS under Continental Casualty's policies. Since Continental Casualty has made no argument as to why these

7

documents are protected under the work product doctrine, they must be produced.

**ORDERED:** Continental Casualty Company's Motion for Protective Order is granted in part and denied in part.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED: DEC 0 2 2003

8